Henry J. Latham, J.
This is an application to stay the arbitration demanded by the respondent Norma Brill upon the ground that there is no agreement for the arbitration of the matters set forth in respondent’s demand and that no arbitrable dispute exists between thém.
On July 29, 1959, petitioner entered into a written agreement with the respondent for the moving and storage of various household furniture owned by her, section 10 of which, on the printed form of terms and conditions prepared by petitioner, provides as follows: 11 Any controversy or claim arising out of or relating to this contract, the breach thereof, or the goods affected thereby, whether such claim be founded in tort or contract, shall be settled by arbitration under the Arbitration Law of the State of New York, and under the rules of the American Arbitration Association, provided however, that upon any such arbitration the arbitrator or arbitrators may not vary or modify any of the foregoing provisions;” A substantially identical provision is contained in the warehouse receipt dated July 29, 1959, which petitioner delivered to the respondent.
Petitioner claims that strictly in compliance with the laws of the State of New York a sale of the respondent’s stored property for the nonpayment of charges took place at its warehouse on April 6, 1960, of which respondent had prior notice and in fact was in attendance at the auction. Nevertheless, on August 13, 1960, more than four months after such sale, she served a demand upon the petitioner to proceed to arbitration before the American Arbitration Association with respect to the following dispute: ‘ ‘ Claim or relief sought: $30,000.00 damages for the conversion and unlawful sale of a quantity of fur *217 niture, silverware, household effects, china, wearing apparel and other items stored by the undersigned and wrongfully sold by Muller Brothers, Inc., at an alleged auction on April 6, 1960, despite my offer and tender in cash of all charges then due.”
Respondent admits that she attended the sale at petitioner’s warehouse on April 6, 1960, but claims that she tendered to the petitioner the amount of its charges of slightly more than $300, which Mr. Henry Muller refused to accept and directed the sale to proceed despite respondent’s repeated protests; that she had with her on that occasion the sum of $600 in cash and was “ willing to pay all accrued charges ” and in fact she “ called out and stated at three separate times to all persons present that the sale of my property was illegal, and I was willing to pay all accrued charges.”
Said Henry Muller, who is the president of the petitioner, states in reply that some three or four weeks before the sale took place, and after respondent received notice of the intended sale, she stated that petitioner could not sell her furniture and belong-ings but was informed by Mr. Jack Hannon, its office manager, that while petitioner did not want to sell her belongings she would have to make some payment ‘1 or we would have no alternative ”; that she left and on the date of sale appeared at the auction and “ started bidding on her own goods.” When these items were knocked down to her by the auctioneer, she refused payment therefor on demand. While the auctioneer was in Mr. Muller’s office respondent entered and “ screamed that she wanted to talk to her attorney.” Thereupon Mr. Muller telephoned her attorney, told him of the situation and offered to withdraw respondent’s goods from the auction if she would make payment of the amount due or even part thereof or if said attorney would guarantee payment. The attorney then again spoke to the respondent on the telephone and when that conversation was concluded she stated to Mr. Muller that he could not sell her property. Petitioner states that respondent never paid or tendered payment of the storage charges which were long overdue, and which amounted to $404.75, either on April 6, 1960, or at any time prior thereto, and that after the conversation with her attorney she simply went outside the office and continued to interrupt the auction.
Section 118 of the General Business Law provides, in pertinent part: “At any time before the goods are so sold any person claiming a right of property or possession therein may pay the warehouseman the amount necessary to satisfy his lien and to pay the reasonable expenses and liabilities incurred in serving notices and advertising and preparing for the sale up to the *218 time of such payment.” Petitioner’s liability, if any, for respondent’s cldim depends upon the resolution of the sharp issue of fact outlined above whether the respondent made the tender of payment contemplated by the foregoing statute. The sole question to he determined by this court is whether that dispute is referable to arbitration or must be decided in a plenary action.
The court is of the opinion that the dispute has its origin in and relates to the contract between the parties and is, therefore, referable to arbitration under the broad provisions of the arbitration clause contained therein. Indeed such arbitration clause expressly provides that any controversy arising out of or relating to the contract, the breach thereof, or the goods affected thereby, is to he settled by arbitration ‘ ‘ whether such claim be founded in tort or contract.” It follows that the application to stay arbitration must he denied and the parties directed to proceed with the arbitration initiated by the notice of the American Arbitration Association dated August 12, 1960. Proceed on notice.